July 19, 1978

## 78-40 · MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, LAND AND NATURAL RESOURCES DIVISION

### Conflicts of Interest (18 U.S.C. § 207)—American Bar Association Code of Professional Responsibility

The Office of Professional Responsibility has referred your inquiry regarding the letter received from a former Assistant U.S. Attorney (A), concerning his possible representation of several defendants in a case brought by the United States on behalf of an Indian tribe on a reservation.

A states that he resigned as an Assistant U.S. Attorney in 1976. While he was in the U.S. Attorney's Office, he participated, to some extent, in the case to prevent depletion of ground water supplies. The court has apparently granted the defendants' motion to join ground water users, and A states that he expects to be asked to represent some of the water users. Whether he may properly do so depends on the application of the criminal conflict-of-interest laws and Canons 4 and 9 of the American Bar Association (ABA) Code of Professional Responsibility to the particular facts.

A indicates that he does not believe his involvement in the case was substantial. He says that the Land and Natural Resources Division had primary responsibility for the case and that an attorney (B) in the Land and Natural Resources Division planned and directed the Government's position, drafted the complaint, and signed all motions. A does state that he conferred regularly with B and attended meetings with attorneys from the Department of the Interior Field Solicitor's Office and attorneys of the Native American Rights Fund. However, he is not of the view that he possesses any confidential information or that his participation in the case would prejudice the United States.

B states that A was "the Assistant United States Attorney with whom we worked in preparing and filing various papers." A may have attended a portion of a meeting attended by the Bureau of Indian Affairs, the Department of Justice, and Native American Rights Fund attorneys to prepare an initial draft of the complaint, although A had no substantive involvement in the drafting. After the complaint was filed, A attended a meeting in the U.S. Attorney's Office to discuss the litigation.

A memorandum written by B further indicates that A "probably signed" the Government's memoranda opposing the defendants' motion to dismiss,[1] but that he made no contribution to its contents. He was present for a portion of the hearing on this motion, but did not argue the Government's position.

According to B, A was also present and was prepared to make a short statement of the Government's position at a hearing on a motion filed by the Indian tribe relating to a class action issue, but he was not requested to state the Government's position.

Finally, A was apparently present at a meeting attended by the Government's soils, hydrology, and geology experts, who discussed their preliminary findings on matters relating to the case. B informed us that he believes some discussion of trial strategy occurred at this meeting as well.

It is not clear to what extent A's account of his role is inconsistent with B's statement, particularly regarding the meeting attended by the Government's experts. But on the basis of B's account, and at least in the absence of a showing by A that his involvement in and exposure to the case was more limited than now appears, we would advise that he not participate in the case.

The pertinent conflict-of-interest statute here is 18 U.S.C. § 207(a), providing that a former Government employee may not act as agent or attorney for anyone other than the United States in a particular matter involving the United States in which he participated "personally and substantially" as a Government employee.[2]

The word "substantial" in § 207(a) is intended to preclude coverage of mere casual exchanges with another employee about a matter, cf. B. Manning, *Federal Conflict of Interest Law* 71 (1964), and "participation by purely ministerial or procedural acts," R. Perkins, *The New Federal Conflict-of-Interest Law*, 76 Harv. L. Rev. 1113, 1128 (1963), quoting Association of the Bar of the City of New York, *Conflict of Interest and Federal Service* 274 (1960). The word clearly was not designed to create an exemption for an individual who was involved but "may have not bothered to dig into the substance of the case." *Id.*

Although B states that A's "substantive participation was minimal," and although we think this a close case, we are of the opinion that the pattern of personal involvement and responsibility described constitutes "substantial participation" for purposes of 18 U.S.C. § 207(a), rather than the type of "casual" or "ministerial or procedural" involvement intended to be excluded from the statute's coverage. This is not a situation, for example, in which A was merely asked to file papers prepared in the Land and Natural Resources

---

[1] It is not clear whether A's statement in his letter that B signed all motions is inconsistent with the latter's statement that A "probably signed" these particular memoranda. We are not in a position to resolve a factual dispute on this issue if indeed one exists.

[2] 18 U.S.C. § 207(b) imposes a 1-year ban on personal appearances in particular matters that were under the former Government employee's "official responsibility" during his last year of Government service. This provision clearly barred A for as long as it applied, because the case was apparently assigned to him when he was in the U.S. Attorney's Office. But § 207(b) will have no practical impact here because it has been more than a year since A left the U.S. Attorney's Office.

Division without any further exposure to the case. Indeed, he concedes that he conferred regularly with B and attended some meetings pertaining to the case.[3]

We need not determine the applicability of 18 U.S.C. § 207(a) here, however, because it appears from the Lands Division attorney's account that A is disqualified under Canon 4 of the ABA Code of Professional Responsibility. Disciplinary Rules 4-101(A) and (B) provide that, except with the consent of the client (or in certain other situations not relevant here), a lawyer may not reveal a confidence or secret of a client or use a confidence or secret to the disadvantage of the client. A lawyer violates these prohibitions only if he actually breaches the confidential relationship. Nevertheless, many authorities have held that as a procedural matter a lawyer is not qualified to represent a party in litigation if he formerly represented an adverse party in a matter substantially related to the pending litigation. ABA Formal Opinion 342, 62 A.B.A.J. 517 (1976) and cases cited.

Moreover, it is ordinarily not necessary to establish that the attorney did, in fact, receive confidential information in the earlier representation in order for an attorney to be disqualified under Canon 4. An exploration of this issue might destroy the very confidentiality that Canon 4 is intended to protect. ABA Formal Opinion 342, *supra*. 517 n. 6; *Emle Industries, Inc.* v. *Patentex, 478 F. (2d) 562, 571 (2d Cir. 1973). It is sufficient if "it can reasonably be said that in the course of the former representation the attorney *might* have acquired information related to the subject matter of his subsequent representation." *NCK Organization, Ltd.* v. *Bregman, 542 F. (2d) 128, 134 (2d Cir. 1976)* [emphasis in original]. *See also, Richardson* v. *Hamilton International Corp., 469 F. (2d) 1382, 1385 (3d Cir. 1972).*

In view of B's account of A's repeated involvement in and exposure to the case—particularly his apparent presence at a portion of the meeting with the Government's experts at which B informed us there was probably some discussion of trial strategy—would seem to be a case in which it may be said that A "might have acquired information related to the subject matter" of the lawsuit. As mentioned above, A did not merely perform the essentially ministerial act of filing papers prepared in Washington without having any occasion to consider the merits of the case.

---

[3]A related issue is whether A is barred by DR 9-101(B) of the ABA Code, which provides that a lawyer may not accept private employment in a matter in which he had "substantial responsibility" as a public employee. We have taken the position that whether a lawyer in a supervisory position had substantial responsibility under this rule depends on such factors as whether his relationship to the matter was merely formal, whether the subject matter was routine and involved no policy determination or was not otherwise of particular significance, and whether there were intervening layers of responsibility or other indications that the matter was not of a type with which the attorney would or should have had personal involvement. *See, generally, Kesselhaut* v. *United States* (Ct. Cl., March 29, 1976), slip opinion at 24-29, Opinion 889 of the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York. *Contra,* ABA Formal Opinion 342, 62 A.B.A.J. 517, 520 (1976). Similar considerations would no doubt apply where, as here, the former Government lawyer had a nonsupervisory relationship to the case. As with the application of 18 U.S.C. § 207(a), the DR 9-101(B) issue is a close one on the facts thus far presented and need not be finally resolved.

A client ordinarily may waive the confidentiality requirement in Canon 4 and thereby permit an attorney to appear on behalf of an adverse party in a substantially related case, but a waiver is generally thought to be inappropriate where the public interest is at stake in a case, as where the United States is a party. ABA Informal Opinion 1233. On the facts as B described, we doubt that a waiver would be appropriate here in any event, because of the substantial question regarding A's representation that would be raised under 18 U.S.C. § 207(a) and DR 9-101(B).

For these reasons, we have strong reservations about the propriety of A's proposed representation. Obviously, however, we have not been privy to all of the factual details, particularly those that might color the ultimate judgment here. We have attempted to outline the considerations that we think are relevant. We propose that your Division share this memorandum with A and invite him to comment and to add any factual details he thinks pertinent. If he so elects, and if your Division thinks it would be helpful, we would be pleased to take a second look at this question.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
